A. B. HERVEY, Acting Director, Dept. of Finance & Admn. *v.* MACFARLANE COMPANY

74-9                                        510 S.W. 2d 303

Opinion delivered May 6, 1974
[Rehearing denied June 10, 1974.]

*Walter Skelton, Karl D. Glass, John F. Gautney, Harlin Ray Hodnett* and *J. R. Nash*, for appellant.

*Mahony & Yocum*, for appellee.

Lyle Brown, Justice. Appellee MacFarlane Company is engaged in the production of oil under leases in Union and Ouachita Counties. The trial court awarded MacFarlane a statutory credit on its severance tax for sums expended in the construction of a salt water disposal system; that award is appealed from. The single point for reversal is that the evidence does not support the award.

In 1959 the Arkansas Legislature enacted Act 57 with the stated purpose of promoting oil production by granting an exemption from severance taxes levied on oil production,

such exemption to be given to producers who install satisfactory underground salt water disposal systems. See Ark. Stat. Ann. § 84-2113 *et seq.* (Repl. 1960).

In 1959 and again in 1960 appellee installed two separate salt water disposal systems and was granted an allowance against severance tax for the cost of each system to be spread over a ten year depreciation period in each case. The first system was designated as the Umsted B-6 Salt Water Disposal System and the second system was designated as the J.S. Murphy No. 12 Salt Water Disposal System. In 1962 appellee extended the Umsted B-6 System to cover additional wells, that system being designated as the Umsted B-6 Extension. The cost of that extension (as were the costs of the two previous systems) was allowed a new depreciation period of ten years.

In 1968 and 1969 appellee drilled an additional 23 wells. In order to take care of the salt water which was over-taxing the old disposal systems, and to provide for disposal from the new wells, appellee constructed what became known as Hays No. 10 Salt Water Disposal System. Appellee applied to appellant for a credit against severance tax for the cost of Hays No. 10. Appellant disallowed the credit on the grounds that Hays No. 10 system was duplicative in its functions; that the claim for severance tax credit included unnecessary costs; and asserted the whole claim was subject to question.

Appellee exhausted its administrative remedies without success. It then filed this suit seeking a mandatory injunction directing appellant to certify the costs of Hays No. 10 as a credit against severance taxes over a ten year period. The credit sought was for $48,137.46.

The only witness for appellee was James H. Nobles, Jr., its managing partner with headquarters in El Dorado. His testimony leaves little doubt about the need for the installation of the Hays No. 10 disposal system. He testified appellee was originally disposing of some 18,000 barrels of salt water a day. Because of the addition of more and more wells appellee was having to dispose of approximately 34,000 barrels of salt water daily. He also testified that the additional salt water exceeded the capacity of the two original systems, the Umsted and the Murphy systems. He explained that all three disposal systems were being operated as a matter of necessity.

Without their utilization "I was going to have salt water running out my ears". Incidentally, each disposal system to which we have referred was approved by the Arkansas Pollution Control Commission and the Arkansas Oil and Gas Commission.

From what we have said about the evidence introduced through Mr. Nobles it is clear to us the construction of Hays No. 10 disposal system was a necessity. However, we cannot agree with the chancellor that appellee is entitled to depreciation as to that part of Hays No. 10 which services the wells connected with the Umsted B-6 system, the Murphy No. 12 system, and the Umsted B-6 extension. That is because appellee has already been allowed credit for construction of those systems. If appellee, in constructing those systems, did not adequately anticipate the salt water load which would develop from the wells connected with those systems, he cannot come back and take credit for supplementing the disposal of salt water from the wells which the old systems are serving. In other words the chancellor should have prorated the cost of Hays No. 10 and allowed appellee credit for that part of the construction which services the 23 wells drilled in 1968 and 1969.

We do not agree with appellant that the costs of land acquisition through outright purchase and lease, cannot be allowed. If the cost of those acquisitions is found by the court to be a reasonably necessary expenditure for the utilization of Hays No. 10 then we think those expenditures should be allowed. Ark. Stat. Ann. § 84-2118.

Reversed and remanded.